UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

SECURITIES AND EXCHANGE COMMISSION, )
)
Plaintiff, )
)
v. )
) 09-81524
HOMEPALS, LLC, HOMEPALS INVESTMENT )
CLUB, LLC, RONNIE EUGENE BASS, JR., ABNER )
ALABRE and BRIAN J. TAGLIERI, )
)
Defendants. )     CIV-RYSKAMP
_____ )

FILED by LCS D.C.
OCT 16 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

**COMPLAINT**                            MAGISTRATE JUDGE
                                         VITUNAC

Plaintiff Securities and Exchange Commission alleges as follows:

**INTRODUCTION**

1. In a Ponzi scheme that began in April 2008, Defendants HomePals Investment Club, LLC ("HPIC") and HomePals, LLC (collectively "HomePals"), and their principals, Ronnie Eugene Bass, Jr., Abner Alabre and Brian J. Taglieri, raised at least $14.3 million from hundreds of Haitian-American investors by baselessly guaranteeing to double their money every 90 days. HomePals claimed it was able to generate such spectacular returns through Bass' purported successful trading of stock options and commodities.

2. In reality, Bass used less than 10 percent of investors' funds for trading. In classic Ponzi scheme fashion, the Defendants used most of the investor funds they solicited to pay off earlier investors. Furthermore, in contrast to the Defendants' claims that Bass was a successful trader, he suffered trading losses of nearly 20 percent of the small portion of funds he did trade. By the end of December 2008, HomePals had only $7,300 left and stopped making payments to investors.

3.      As a result of this conduct, the Defendants violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (c) and 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5. As a further result of this conduct, Bass violated Sections 206(1), (2) and (4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8 thereunder.

4.      The Commission requests that the Court enter orders: (1) permanently enjoining the Defendants from violating the federal securities laws; (2) directing the Defendants to disgorge all profits or proceeds they received as a result of the acts and/or courses of conduct complained of, with prejudgment interest; and (3) directing the Defendants to pay civil money penalties.

## DEFENDANTS

5.      HPIC is a Florida limited liability company formed in April 2008. Bass was HPIC's managing member and, together with Alabre and Taglieri, oversaw all facets of its business. HPIC was the initial entity Bass, Alabre and Taglieri used to raise investor funds until they formed HomePals, LLC in June 2008. HPIC has never registered an offering or class of securities with the Commission.

6.      HomePals, LLC, is a Florida limited liability company with its principal place of business in Delray Beach. After its formation in June 2008, HomePals, LLC became the primary entity through which Bass, Alabre and Taglieri raised investor funds. HomePals, LLC has never registered an offering or class of securities with the Commission.

7.      Bass, 35, resides in Miami, Florida. He is the founder and managing member of HomePals and, in this connection, met with prospective and actual investors for HomePals and held himself out as a master trader of stock options and commodities.

8. Alabre, 33, resides in Miramar, Florida. Although Alabre had no formal title with HomePals, he presented himself as the company's secretary and, in this capacity, met with prospective and actual investors.

9. Taglieri, 49, resides in Jupiter, Florida. Taglieri had no official title with HomePals, but he improperly presented himself as the company's attorney and, under these false pretenses, met with prospective and actual investors.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

11. The Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida because many of the Defendants' acts and transactions constituting violations of the Securities and Exchange Acts occurred in the Southern District of Florida. In addition, HomePals' principal place of business is in the Southern District of Florida, and Bass, Alabre and Taglieri each reside in the Southern District of Florida.

12. In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## THE DEFENDANTS' FRAUDULENT INVESTMENT SCHEME

### A. Overview of HomePals' Fraudulent Offering

13. From April 2008 through at least December 2008, the Defendants conducted a fraudulent scheme that targeted Haitian-American investors from South Florida and New Jersey.

The Defendants offered and sold 90-day unsecured notes issued by HomePals that promised guaranteed returns of 100 percent.

14. Prospective investors learned about HomePals' investment program mainly through word of mouth. Many attended presentations at HomePals' offices where Bass, Alabre and Taglieri pitched the unsecured notes. HomePals also had a website, www.homepalsinvestmentclub.com, through which it offered its unsecured notes to the general public.

15. During the presentations, Bass told prospective investors they would double their money after 90 days of investing with HomePals based on his extraordinary talent at trading stock options and commodities. Bass did not provide any details about his trading strategy, but explained to prospective investors that he was able to double investor money in as little as 20 days. Bass, Alabre and Taglieri further assured prospective investors their investments would be safe, claiming the principal was not at risk and guaranteeing the promised returns. Bass even went so far as to claim a $25 million insurance policy protected every investment with HomePals.

16. Although HomePals accepted some investments directly from individuals, it raised most of its money through the use of investment clubs. Bass, Alabre and Taglieri told prospective investors to form their own investment club or, in the alternative, join one of the numerous clubs already investing with HomePals. Bass, Alabre and Taglieri promised to pay those forming new investment clubs a 10 percent commission on every investment their club made with HomePals, thus providing an incentive for them to recruit additional investors.

17. Bass and Taglieri instructed the investment clubs to open an account at the same bank HomePals used, collect investors' funds, and transfer them in one lump investment to

HomePals by certified check, wire or intra-bank transfer. Upon receipt of the club's funds, Alabre would execute and deliver to the investment club president an unsecured note for 200 percent of the value of the club's investment with a 90-day redemption date.

18. At the end of the 90 days, HomePals would repay the unsecured note to the investment club (purportedly the principal and the guaranteed 100 percent profits), minus a 10 percent commission on the alleged profits that HomePals charged.

19. HomePals received pooled funds from as many as 64 investment clubs, and raised approximately $14.3 million from hundreds of Haitian-American investors.

B. **Material Misrepresentations and Omissions to Investors**

20. In connection with HomePals' fraudulent offering, the Defendants made numerous material misrepresentations and omissions regarding, among other things, Bass' ability to generate extraordinary returns, the safety and security of HomePals' investments, and the use of investor funds.

21. Bass, Alabre and Taglieri told investors Bass would use their money to trade primarily stock options and commodities. Bass told potential investors that HomePals was able to generate 100 percent returns in 90 days based on his trading expertise. Alabre and Taglieri reinforced these claims of extraordinary returns by telling potential investors that HomePals was "very profitable" and "making millions."

22. The Defendants' claims that they could double investors' money in 90 days and that Bass used all their money to trade were false. It was impossible for the Defendants to double investors' money because they transferred no more than $1.2 million of the $14.3 million they raised to Bass' accounts to trade. Instead, the Defendants used the vast majority of funds they raised – $11.5 million – to repay earlier investors.

23. Furthermore, Bass, Alabre and Taglieri misappropriated at least $668,000 of the money HomePals raised for their personal use. For example, Bass and Alabre used at least $380,000 to pay for a house where they both resided until recently. Bass misappropriated an additional $28,000 for himself, part of which he used to purchase an automobile. HomePals also distributed approximately $28,000 to Alabre as "compensation." Additionally, Taglieri received an undisclosed salary of $8,000 per month, and diverted $85,000 of investor funds to pay his overdue child support obligations.

24. The Defendants' claims that Bass was a successful trader were also false. Of the small amount of investor funds he actually traded, Bass generated losses of 19 percent. Based on their control over HomePals' bank accounts where investor funds were deposited, Alabre and Taglieri knew, or were reckless in not knowing, that Bass was engaged in very limited trading and that investor funds were the only source of revenue for HomePals.

25. Bass, Alabre and Taglieri each assured investors that the principal and interest on HomePals' unsecured notes would be guaranteed. Bass also told investors that a $25 million insurance policy protected every investment with HomePals.

26. These representations were false because HomePals could not guarantee its notes, and there was no insurance policy of any kind, which Bass and the other Defendants knew.

27. Bass also falsely told prospective investors that he had a professional trading license and had never suffered any investment losses. Bass has never had any sort of trading license, and his trading records show he suffered losses even as he told investors he had not.

28. Bass and Taglieri also told investors that Taglieri was HomePals' attorney. This representation was false because Taglieri is not an attorney.

### C. HomePals' Collapse

29. By November 2008, HomePals' investors began experiencing difficulties redeeming their unsecured notes. By that time, HomePals had only $400,000 remaining in investor funds, well short of the amount needed to redeem approximately $12 million in outstanding notes HomePals had issued.

30. Around this same time, Bass, Alabre and Taglieri held a meeting with the investment club presidents in which they informed the presidents that HomePals was having financial problems and, as a result, would not be able to repay its investors on time.

31. Bass sent a letter to all investment club presidents on December 26, 2008 explaining that, "as a consequence of heavy losses suffered" from a variety of supposedly unforeseen events, HomePals could not currently redeem their unsecured notes, but promised that the company would be in a position to do so by March 6, 2009.

32. Despite these assurances, HomePals did not redeem the unsecured notes by March 6 (or at anytime thereafter) and, much to the shock of its investors, closed its offices for good on March 7, 2009.

### COUNT I

### HomePals, Bass, Alabre and Taglieri Violated of Section 5(a) and 5(c) of the Securities Act

33. The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

34. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions described in this complaint, and no exemption from registration exists with respect to the securities and transactions described in this Complaint.

35. From at least April 2008 through December 2008, the Defendants directly and indirectly: (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise; (b) carried securities or caused such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, without a registration statement having been filed or being in effect with the Commission as to such securities.

36. By reason of the foregoing, the Defendants directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### HomePals, Bass, Alabre and Taglieri Violated
### Section 17(a)(1) of the Securities Act

37. The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

38. Starting no later than April 2008, the Defendants, directly or indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud..

39. By reason of the foregoing, the Defendants directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(l) of the Securities Act [15 U.S.C. §77q(a)].

## COUNT III

### HomePals, Bass, Alabre and Taglieri Violated
### Section 17(a)(2) and (3) of the Securities Act

40. The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

41. The Defendants, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or of the mails: (a) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (b) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

42. By reason of the foregoing, the Defendants directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)].

## COUNT IV

### HomePals, Bass, Alabre and Taglieri Violated
### Section 10(b) and Rule 10b-5 of the Exchange Act

43. The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

44. Starting no later than April 2008, the Defendants, directly or indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and courses of business

which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

45.     By reason of the foregoing, the Defendants directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240].

### COUNT V

### Bass Violated Sections 206(1), (2) and (4) and Rule 206(4)-8 of the Advisers Act

46.     The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

47.     At all relevant times, Bass acted as an investment adviser, as defined by Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

48.     Bass, by engaging in the acts and conduct alleged above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce, or by the use of the mails, and while engaged in the business of advising others for compensation as to the advisability of investing in, purchasing, or selling securities:

  (a) with scienter, employed devices, schemes, or artifices to defraud clients or prospective clients;

  (b) engaged in transactions, practices, and courses of business which operated or would have operated as a fraud or deceit upon clients or prospective clients;

  (c) engaged in acts, practices, and courses of business which were fraudulent, deceptive, or manipulative; or

  (d) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading, to any investor or prospective investor in a pooled investment vehicle.

49. By reason of the foregoing, Bass, directly or indirectly, violated, and unless enjoined is reasonably likely to continue to violate, Sections 206(1), (2) and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine, and find that the Defendants have committed the violations of the federal securities laws alleged in this Complaint.

### II.

### Permanent Injunctive Relief

Issue a Permanent Injunction restraining and enjoining the Defendants from violating Sections, 5(a), 5(c) and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5, and additionally enjoin Bass from violating Sections 206 (1), (2), and (4) of the Advisers Act and Rule 206(4)-8 thereunder.

### III.

### Disgorgement

Issue an Order directing the Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

## IV.

## Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and Section 21(d) of the Exchange Act [15 U.S.C. § 78(d)(3)].

## V.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VI.

## Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

October 15, 2009     By: *Robert K. Levenson*
Robert K. Levenson
Regional Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
E-mail: levensonr@sec.gov
**Lead Trial Attorney to be noticed**

William T. Conway III
Senior Counsel
New York Bar No. WC7014
Direct Dial: (305) 982-6328
E-mail : conwayw@sec.gov

*Attorneys for Plaintiff*
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:   (305) 536-4154

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

09-81524

FILED by _____ D.C.
OCT 16 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

## I. (a) PLAINTIFFS
Securities and Exchange Commission

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Robert K. Levenson, Esq., (305) 982-6341
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800, Miami, FL 33131

## DEFENDANTS
HomePals, LLC, HomePals Investment Club, LLC, Ronnie Eugene Bass, Jr., Abner Alabre, Brian J. Taglieri

County of Residence of First Listed Defendant Palm Beach
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys (If Known)
See Attached

CIV-RYSKAMP

**(d)** Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☐ BROWARD ☑ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☑ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

MAGISTRATE JUDGE VITUNAC

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☑ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO        b) Related Cases ☑ YES ☐ NO

JUDGE Kenneth L. Ryskamp        DOCKET NUMBER 09-80581-CIV

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

15 U.S.C. §§ 77e(a) and (c) and 77q(a); 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; 15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4) & 17 C.F.R. § 275.206(4)-8. Violations of the federal securities laws.
LENGTH OF TRIAL via 7 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Perm. Inj., Disgorgement & Penalties

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
Robert K. Levenson  /s/ Robert K. Levenson

DATE
October 15, 2009

FOR OFFICE USE ONLY
AMOUNT _____  RECEIPT # Waived  IFP _____

Attorneys (if known)

Mark David Hunter, Esq.
Leser Hunter Taubman & Taubman, PLLC
255 University drive
Coral Gables, FL 33134
Telephone: (305) 629-8816
Facsimile: (305) 629-8877
*Counsel for Abner Alabre*

Jeffrey L. Cox, Esq.
Sallah & Cox, LLC
2101 NW Corporate Blvd., Suite 218
Boca Raton, FL 33431
Telephone: (561) 989-9080
Facsimile: (561) 989-9020
*Counsel for Brian J. Taglieri*